UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

FEB 26 2016



| | |
|---|---|
| PERFETTI VAN MELLE USA INC., and PERFETTI VAN MELLE BENELUX B.V.,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDWEST PROCESSING, LLC, and DEXTER JORGENSEN,<br><br>Defendants. | 4:15-CV-04093-RAL<br><br>OPINION AND ORDER GRANTING IN PART REQUEST FOR DAMAGES AND MOTION FOR PERMANENT INJUNCTION |

Plaintiffs Perfetti Van Melle USA, Inc. and Perfetti Van Melle Benelux B.V. (collectively, "Perfetti") arranged through a third party for Defendants Midwest Processing, LLC ("Midwest") and Dexter Jorgensen ("Jorgensen") to recycle candy that Perfetti had manufactured but deemed unsalable. Perfetti sued Defendants in this Court after learning that Defendants wrongfully had diverted the candy to retail stores for sale rather than recycling it. This Court entered a default judgment against Defendants under Federal Rule of Civil Procedure 55(b)(2), Doc. 43, and set a briefing schedule on the issue of Perfetti's recoverable damages, Doc. 44. Perfetti filed a brief and supporting evidence concerning its damages, and the time for Defendants to respond has long passed.[1] For the reasons explained below, this Court grants in part Perfetti's request for damages and permanent injunction.

---

[1] Defendants had until December 2, 2015, to respond to Perfetti's opening brief on damages. The parties communicated to this Court informally that Defendants would not be filing any response. Defendants thereby did not contest Perfetti's ultimate damage calculations.

1

I.      **Facts**

Perfetti is a global manufacturer of candy and chewing gum whose brands include Airheads®, Airheads Xtremes®, and Mentos®. Doc. 1 at ¶¶ 1, 12. All Perfetti products manufactured in the United States are sold through authorized distribution channels to retailers around the country. Doc. 1 at ¶ 13. Perfetti introduced a new product in 2014 called "Airheads Xtremes® Bites" ("Xtremes® Bites"). Doc. 1 at ¶ 20; Doc. 18-1 at 1; Doc. 18-2 at 1. Xtremes® Bites were initially imported from Italy, but Perfetti USA began manufacturing the candy in the United States in July 2014. Doc. 1 at ¶ 23; Doc. 18-1 at 1; Doc. 18-2 at 1.

Between November 2014 and February 2015, Perfetti USA determined that certain Xtremes® Bites production runs did not meet specifications and would therefore be withheld as unsalable product. Doc. 1 at ¶ 25; Doc. 18-2 at 1–2. The sanding sugar on some of the product did not adhere correctly, causing the product to become harder than usual, and individual pieces showed signs of clumping together in the package. Doc. 1 at ¶ 25. Other problems arose with packaging of the product, including sealing defects. Doc. 1 at ¶ 25. Although posing no health or safety risk to consumers, the withheld product had defects in quality or packaging that are common when calibrating a new production line and that would make the product less appealing to consumers. Doc. 1 at ¶ 26; Doc. 18-2 at 2.

Perfetti USA contacted an environmental services broker, Advanced Environmental, Inc. ("Advanced Environmental"), to arrange for the recycling of the unsalable Xtremes® Bites. Doc. 1 at ¶ 28; Doc. 18-2 at 2. Perfetti USA specifically instructed Advanced Environmental that the candy was not to be sold out on the market. On Perfetti USA's behalf, Advanced Environmental engaged Midwest, a South Dakota company operated by Jorgensen, to haul away and recycle the unsalable Xtremes® Bites. Doc. 1 at ¶¶ 7, 8, 28; Doc. 18-2 at 2. Midwest and

Jorgensen agreed with Advanced Environmental to recycle the unsalable Xtremes® Bites. Doc. 18-3 at 2. Advance Environmental never told Jorgensen or Midwest that they could sell the candy. Doc. 18-3 at 3.

Between November 2014 and February 2015, Midwest, through a logistics company, picked up fifteen truckloads of unsalable Xtremes® Bites and candy slurry from Perfetti USA's facility in Kentucky. Doc. 1 at ¶¶ 29, 30, 31; Doc. 18-2 at 3. Rather than recycling the loads, Midwest had the majority of them shipped to Silver Dollar Sales, Inc. ("Silver Dollar"), a Mississippi wholesaler. Doc. 1 at ¶¶ 30, 31; Doc. 45-1 at 2; Docs 38, 39. Midwest provided falsified certificates of disposal to Perfetti USA attesting to the recycling of the individual loads. Doc. 1 at ¶ 33. The certificates of disposal came attached to bills of lading showing that the ultimate destination of the loads was Midwest's business address in Burbank, South Dakota. Doc. 1 at ¶ 31; Doc. 18-2 at 6–7; Doc. 18-3 at 16–29.

In mid-April 2015, Perfetti USA first learned that an independent grocery sales broker, Tray Harrison ("Harrison"), had approached JONS International Markets ("JONS"), a Southern California-based grocer, with sample 3.8 ounce bags of Xtremes® Bites. Doc. 1 at ¶ 34; Doc. 18-2 at 2. Harrison had offered to sell JONS multiple pallets of Xtremes® Bites for well below the average wholesale price. Doc. 1 at ¶ 36; Doc. 18-2 at 2. Suspicious of the low price and the fact that Harrison was not affiliated with Crossmark, Perfetti's authorized sales broker, JONS contacted a Crossmark representative about the offer, who in turn contacted Perfetti USA. Doc. 1 at ¶¶ 37, 38; Doc. 18-2 at 2. Perfetti USA traced the lot code on a sample bag that Harrison left with JONS to a production run of Xtremes® Bites that Midwest received in February 2015 for recycling. Doc. 1 at ¶ 39; Doc. 18-2 at 2–3.

Perfetti hired two law firms—Frost Brown Todd LLC and Carrington, Coleman, Sloman & Blumenthal, LLP—to sue Harrison after he refused to cooperate with Perfetti's attempt to determine how its unsalable product reached the marketplace. Doc. 45-1 at 1–2. At a hearing in late April 2015, Harrison revealed that he had obtained the Xtremes® Bites from Silver Dollar Sales. Doc. 1 at ¶ 41. Around the same time, Perfetti learned that another independent sales representative, Timothy Avers ("Avers"), was attempting to sell a large quantity of Xtremes® Bites at a price well below wholesale. Doc. 45-1 at 2. Perfetti engaged an Illinois firm, Schopf & Weiss LLP, to investigate Avers, who eventually cooperated and revealed that Silver Dollar was his supplier. Doc. 45-1 at 2.

Diverted Xtremes® Bites also have appeared in Alabama. Doc. 1 at ¶ 46. A grocery store in Hartford, Alabama offered to sell Crossmark representatives a bin of two-ounce Xtremes® Bites packages for $800.00. Doc. 1 at ¶ 46. The store was selling the two-ounce packages individually for well below the suggested retail price. Doc. 1 at ¶ 46; Doc. 18-2 at 3. The bin was gone when a Crossmark employee returned to purchase it on April 22, 2015, but the employee was still able to obtain twenty-five leftover packages of two-ounce Xtremes® Bites. Doc. 1 at ¶ 47; Doc. 18-2 at 3. The lot codes on the twenty-five packages matched with product that Perfetti USA had provided to Midwest for recycling in November 2014. Doc. 1 at ¶ 48; Doc. 18-2 at 3.

Perfetti filed the present complaint on May 22, 2015, alleging, among other things, that Defendants committed fraud and deceit, violated the Lanham Act, and engaged in unfair competition. Doc. 1. This Court set a hearing on Perfetti's motion for a temporary restraining order that same day, notifying the Defendants by email of the time and place of the hearing and inviting them to participate in person or by telephone. Doc. 33 at 6. Perfetti alone appeared at

the hearing, after which this Court granted Perfetti's motion. Doc. 33 at 6. This Court set a second hearing for May 28, 2015, to consider Perfetti's motion for a preliminary injunction. Doc. 33 at 6. Although Defendants received notice of the hearing via email from this court and personal service by Perfetti, they did not participate. Doc. 33 at 6. On June 4, 2015, this Court entered a preliminary injunction enjoining Defendants from distributing or selling Xtremes® Bites and giving Defendants ten days to produce an accounting explaining to whom they had sold the candy and the amount of profits they received from doing so. Doc. 24.

On June 22, 2015, Perfetti moved for an order to show cause because Defendants had failed to produce the accounting. Doc. 25. Perfetti also applied for an entry of default judgment, which the Clerk of Court granted on June 25, 2015, because Defendants had not answered or otherwise responded to the complaint. Doc. 30. Thereafter, this Court granted Perfetti's motion to show cause, Doc. 33, held a hearing at which both Perfetti and counsel for Defendants appeared, and issued an order finding Defendants in contempt of court and giving them until July 17, 2015, to produce the previously-ordered accounting, Doc. 36.

Defendants submitted two responses to this Court's order for an accounting. Docs. 38, 39. In the first response, Defendants stated that they sold eight truckloads of Airheads Xtremes® Bites to Silver Dollar for $6,000 a truckload. Doc. 38 at 1. Defendants explained that the $6,000 per a truckload price "was reduced by amount Defendants had to pay Advanced for the product or the transportation cost. After all costs were deducted, Defendants net profit per load was $2,000, for a total profit of $16,000.00." Doc. 38 at 1. Defendants further explained that they paid Advanced Environmental "approximately $4,000.00 per load of packaged product." Doc. 38 at 1. In their second response, Defendants again stated that they made $16,000 in total profit but gave a different accounting of their costs. Doc. 39. Specifically, Defendants said that they

5

paid Advanced Environmental $2,000 per load[2] of candy and then sold the loads to Silver Dollar for $6,000 a load, minus $2,000 per load for shipping costs borne by Silver Dollar. Doc. 39 at 1.

Because of the discrepancy in Defendants' accountings, this Court granted Perfetti leave to subpoena Silver Dollar. Doc. 42. Silver Dollar's response and documentation established that Defendants' calculations were at best unreliable and at worst fraudulent. Silver Dollar responded that it had paid Defendants a total of $93,200.00 for the Xtremes® Bites and that it had paid the shipping for each load. Doc. 45-3 at 1–5, 17. Perfetti eventually purchased Silver Dollar's remaining inventory of Xtremes® Bites for $42,554.45. Doc. 45-1 at 2. Through January 1 of 2016, Perfetti has paid $1,611.00 for the unloading and storage of the Xtremes® Bites it purchased from Silver Dollar. Doc. 45-1 at 2.

Perfetti now seeks to recover as damages the cost of purchasing and storing Silver Dollar's remaining inventory of Xtremes® Bites and the profit Defendants made by selling the Xtremes® Bites to Silver Dollar. Perfetti requests that this Court treble the amount of Perfetti's actual damages as punitive damages against Defendants. Perfetti also seeks its attorney's fees for this action, the related pre-suit investigation, and the action Perfetti brought against Harrison. Finally, Perfetti asks this Court to grant Perfetti's previous motion for a permanent injunction prohibiting Defendants from engaging in the diversion and sale of Perfetti products.

## II. Analysis

After a default judgment, the factual allegations of the complaint are taken as true, except those concerning damages. Murray v. Lene, 595 F.3d 868, 871 (8th Cir. 2010). A party who wins a default judgment is still "required to prove the amount of damages that should be awarded." Oberstar v. FDIC, 987 F.2d 494, 505 n.9 (8th Cir. 1993). Here, the parties agreed to

---

[2]Defendants stated in their second response that they had only paid Advanced Environmental $10,000 for the eight loads and thus still owed Advanced Environmental $6,000. Doc. 39 at 1.

submit the issue of damages through briefing and affidavits, with the understanding that this Court would conduct a hearing to resolve any factual disputes. See Stephenson v. El-Batrawi, 524 F.3d 907, 915 (8th Cir. 2008) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." (quoting Pope v. United States, 323 U.S. 1, 12 (1944))). Given Perfetti's well-supported request for damages and the lack of any response by Defendants, this Court finds that an evidentiary hearing is unnecessary.

### A. Actual Damages

Perfetti contends that it may recover its actual damages under Count I of its complaint, which alleges that Defendants engaged in fraud and deceit under South Dakota law. Although Perfetti already has obtained a default judgment, this Court affirms here that the facts support recovery for fraud and deceit. Defendants agreed to recycle the unsalable Xtremes® Bites yet decided to sell the candy to Silver Dollar instead. Doc. 1 at ¶¶ 30, 55. Defendants issued false certificates of disposal to Perfetti attesting that Defendants had recycled the unsalable Xtremes® Bites. Doc. 1 at ¶¶ 33, 57. Defendants' intent in issuing the certificates was to deceive Perfetti. Doc. 1 at ¶ 59. Perfetti continued to supply the unsalable Xtremes® Bites based on Defendants' representation that the product was being recycled. Doc. 1 at ¶ 60. Had Perfetti known otherwise, it never would have provided unsalable product to Defendants and would have immediately ceased providing the unsalable Xtremes® Bites for Defendants to recycle. Doc. 1 at ¶ 60. These facts meet the elements of fraud and deceit under South Dakota law. See S.D. Codified Laws ("SDCL") § 20-10-1 (setting forth tort action of deceit); Brookings Mun. Utils., Inc. v. Amoco Chem. Co., 103 F. Supp. 2d 1169, 1177 n.11 (defining tort of deceit) (D.S.D.

2000); N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Servs., Inc., 751 N.W.2d 710, 713 (S.D. 2008) (listing elements of fraud).

Under South Dakota law, a party is liable for damages resulting from its fraud and deceit. SDCL § 20-10-1 ("One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."); Liebig v. Kirchoff, 851 N.W.2d 743, 749, 751 (S.D. 2014). The false certificates of disposal Defendants issued caused Perfetti damages. Perfetti continued supplying Defendants with the unsalable Xtremes® Bites based on Defendants' representation that they were recycling the candy. When Perfetti learned that Defendants were actually selling the Xtremes® Bites to Silver Dollar, it had to spend $42,554.45 to recover Silver Dollar's remaining inventory and $1,611.00 to store this inventory. Doc. 45-1 at 2. Perfetti is entitled to recover from Defendants the cost of purchasing and storing Silver Dollar's inventory of Xtremes® Bites under the fraud and deceit theory as well as other damages discussed below.

### B. Defendants' Profits

Perfetti argues that it is entitled to Defendants' profits from selling the unsalable Xtremes® Bites under Counts IV and VII of its complaint, which allege that Defendants violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1). Section 1125(a)(1) imposes liability on

> "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or   commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

Id. Defendants passed off the unsalable Xtremes® Bites that Perfetti had entrusted to Defendants for recycling as merchantable items to Silver Dollar. Doc. 1 at ¶¶ 31, 52, 73–74, 110–112. Silver Dollar then distributed multiple truckloads of the unsalable Xtremes® Bites to dollar and convenience stores across the country, Doc. 1 at ¶ 32, which materially impacted the launch of Xtremes® Bites by allowing off-specification candy to circulate in the market. Those dollar and convenience stores acquiring the unsalable Xtremes® Bites and those customers purchasing the product would have thought the product to be salable and representative of Perfetti's newly launched product based on the labeling and packaging. In reality, the product was deemed unsalable by Perfetti, not representative of salable product, and supposed to have been recycled. A § 1125(a)(1) violation exists under these circumstances.

A plaintiff who proves a violation of § 1125(a) is entitled "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). A plaintiff seeking profits under § 1117(a) bears the burden of proving the defendant's sales while the defendant is responsible for proving its costs or deductions. Id. Recovery under § 1117(a) "shall constitute compensation and not a penalty." Id. In Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242 (8th Cir. 1994), the Eighth Circuit stated that "[i]f a registered owner proves willful, deliberate infringement or deception, an accounting of profits may be based upon 1) unjust enrichment, 2) damages, or 3) deterrence of a willful infringer." Id. at 1247 (quotation and internal quotation marks omitted). A congressional amendment to § 1117(a) in 1999 prompted a circuit split concerning whether a plaintiff establishing a violation of § 1125(a) must also establish that the violation was willful to

recover the defendant's profits under § 1117(a). See Masters v. UHS of Del., Inc., 631 F.3d 464, 471 n.2 (8th Cir. 2011). The Eighth Circuit in Masters assumed "without deciding" that willfulness remains a requirement under § 1117(a) for violations of § 1125(a). Id.

This Court need not decide whether willfulness remains a prerequisite to the recovery of profits because Defendants, by virtue of their default, admitted Perfetti's allegations that their violations of § 1125(a) were willful. See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 538 (D.N.J. 2008) (finding that defaulting defendant admitted allegations in complaint that he acted willfully for purposes of 15 U.S.C. § 1117(c)(2)); Sigel v. Interplay Entm't Corp., No. 6:06-cv-135-Orl-31DAB, 2007 WL 601613, at *1 (M.D. Fla. Feb. 21, 2007) (concluding that by defaulting, defendant admitted allegations in complaint that its violation of the Lanham act was willful). Even if Defendants had not made this admission, other allegations in Perfetti's complaint and evidence in this case—including that Defendants sold the Xtremes® Bites it was supposed to recycle to Silver Dollar as merchantable product and issued false certificates of disposal to Perfetti—are sufficient to establish that Defendants acted willfully.

Perfetti is entitled to recover Defendants' profits under the theories of unjust enrichment and deterrence of willful infringement. Perfetti has spent significant resources developing and promoting its products, which have garnered expansive goodwill within the United States. Doc. 1 at ¶¶ 14, 17–18, 79. When Defendants sold the Xtremes® Bites to Silver Dollar, they exploited Perfetti's goodwill and reputation to make a profit, despite not having any right to do so and not giving Perfetti anything in return. These circumstances justify disgorgement of Defendants' profits so that they are not unjustly enriched. There is also a need for deterrence in this case. Defendants have been sued on two prior occasions for taking possession of a company's unsalable goods, issuing falsified certificates of disposal, and then selling the goods

into the stream of commerce. Doc. 1 at ¶ 49. Notwithstanding these two prior lawsuits, Defendants engaged in the same conduct in this case.

Requiring Defendants to disgorge their profits is consistent with the applicable principles of equity. See Quick Techs., Inc. v. Sage Grp. PLC, 313 F.3d 338, 349 (5th Cir. 2002) (listing equitable factors to consider when determining whether to award profits). First, there is a strong public interest in making the deceptive scheme Defendants engaged in here unprofitable. Second, Defendants do not have any legitimate interest in the profits they made from passing off the unsalable Xtremes® Bites as merchantable product. Third, Perfetti did not delay in asserting its rights; Perfetti launched an investigation within days of learning that the Xtremes® Bites were being sold in the stream of commerce and filed this suit to protect its trademarks just over a month later. Doc. 1 at ¶ 34–48. Finally, injunctive relief alone is not sufficient to do equity in this case. See Minn. Pet Breeders, 41 F.3d at 1247 (stating that "an accounting will be denied in a trademark infringement action where an injunction will satisfy the equities of the case" (quotation omitted)). Defendants stated in their accountings that they have already sold all of the Xtremes® Bites they possessed to Silver Dollar, who in turn sold a significant amount of the candy to multiple dollar stores and grocers. As it is highly unlikely that Defendants will ever be entrusted with Perfetti's products again, an order enjoining Defendants from selling Xtremes® Bites and exploiting Perfetti's trademarks would not be much of a remedy. Further, such an order would not ameliorate the effect of having the unsalable Xtremes® Bites on the market; customers who purchase these unsalable Xtremes® Bites may dislike the product and refuse to buy it in the future, unaware that the product is not representative of the Xtremes® Bites manufactured by Perfetti. Perfetti is entitled to more than an injunction to remedy this harm.

Having determined that Perfetti is entitled to an accounting, this Court must calculate the amount of profits Defendants made through their infringing conduct. Perfetti calculates that Defendants made $83,200 in profits by selling the Xtremes® Bites to Silver Dollar. Perfetti bases this calculation on Silver Dollar's response to its subpoena and a declaration from Advanced Environmental employee Amber Edwards ("Edwards"). Silver Dollar's response and an affidavit from Perfetti's counsel state that Silver Dollar paid Defendants a total of $93,200 for the unsalable Xtremes® Bites and that Silver Dollar covered the shipping for each load of the product. Doc. 45-3 at 1–5, 17. The $93,200 total that Silver Dollar paid for the unsalable Xtremes® Bites is based on a January 12, 2015 check from Silver Dollar to Defendants for $20,000, Doc. 45-3 at 4; a January 20, 2015 electronic payment to Defendants for $40,800, Doc. 45-3 at 3, Doc. 39-3; and a March 26, 2015 check from Silver Dollar to Defendants for $32,400, Doc. 45-3 at 5. Perfetti filed copies of the checks, Doc. 45-3 at 4–5, and Defendants themselves confirmed the $40,800 electronic payment in their second accounting, Doc. 39 at 1; Doc. 39-3. Perfetti relies on Edwards's declaration with respect to Defendants' costs. Edwards stated in her declaration that Defendants paid her a total of $10,000 for the unsalable Xtremes® Bites, at a price of $1,000 per a truckload of candy. Doc. 18-3 at 2. The $10,000 Defendants paid Advanced Environmental was the Defendants' only verifiable cost because Silver Dollar paid for the shipping.

Despite having ample opportunity to do so, Defendants failed to provide any response to Perfetti's calculation of the profits Defendants made by selling the Xtremes® Bites. Under these circumstances—where Perfetti has submitted detailed evidence concerning Defendants' profits and Defendants failed to file any evidence in response or otherwise object to Perfetti's calculation—this Court finds that Perfetti has established that Defendants made $83,200 in

profits by selling the Xtremes® Bites to Silver Dollar.[3] Perfetti is entitled to recover the $83,200 Defendants made in profits under § 1117(a).

### C. Attorney's fees

Perfetti contends that it is entitled to its attorney's fees in this case under § 1117 and South Dakota law. Section 1117(a) provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A case may qualify as

---

[3] Although Defendants filed two accountings earlier in this case, they have not given any indication that they wish to rely on these accountings to dispute Perfetti's calculation of profits. Further, the evidence Perfetti submitted in support of its request for damages shows that Defendants' calculations were at least inaccurate and probably fraudulent. For instance, Defendants stated in their second accounting that they made $16,000 in net profits from selling eight truckloads of Xtremes® Bites to Silver Dollar. Doc. 39 at ¶ 2. Defendants arrived at this $16,000 figure by acknowledging receipt of the $40,800 electronic payment from Silver Dollar on January 20, 2015, subtracting $8,800 of the electronic payment because this amount was allegedly for non-Perfetti product, and subtracting an additional $16,000 they say they owe or paid Advanced Environmental for the Xtremes® Bites. In support of their calculation of profits, Defendants filed what they claim are invoices showing that they charged Silver Dollar $32,000 for the Xtremes® Bites and $8,800 for the delivery of non-Perfetti product. Docs. 39-2, 39-4. Yet Silver Dollar stated that the $40,800 electronic payment, as well as the January 12, 2015 check and the March 26, 2015 check, were payment for the Xtremes® Bites alone. Doc. 45-3 at 17. Further, the record establishes that Defendants delivered a truckload of Xtremes® Bites to Silver Dollar as late as February 3, 2015, Doc. 1 at ¶ 29, Doc. 18-4 at 1–2, Doc. 45-3 at 19, which is well beyond the January 10, 2015 date appearing on the alleged invoice for the Xtremes® Bites and the January 20, 2015 date Defendants claim they were paid in full for the Xtremes® Bites. There are other indications in the record that Defendants have refused to be forthcoming about their profits from these transactions. In both the order granting the preliminary injunction and the order to show cause, this Court required Defendants to produce all emails, documents, and records within Defendants' control concerning payments they received for selling the Xtremes® Bites. Nevertheless, Defendants did not include any documents, such as checks, banking records, or invoices, in their first accounting to support their calculations of the profits they made. Doc. 38. It was only after Perfetti emailed Defendants that their accounting was incomplete that Defendants provided a different calculation of their profits, acknowledged receiving the $40,800 electronic payment, and submitted the alleged invoices. Doc. 39. Now that Perfetti has filed the documentation from Silver Dollar, Defendants have declined to offer any evidence at all. Defendants attempted to satisfy this Court's order in the first accounting by being vague and incomplete, sought in the second accounting to change their calculations and play with one verifiable number, and now have chosen not to contest the evidence of damages. Indeed, the fact that Perfetti had to pay Silver Dollar $42,554.45 to buy back the unsalable Xtremes® Bites still with Silver Dollar after all of its sales demonstrates that Defendants' submitted and conflicting accountings are altogether unreliable.

13

"exceptional" under § 1117(a) when the defendant acted willfully and deliberately. Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1013 (8th Cir. 2011). In addition to willfulness, courts have considered the defendant's conduct during litigation when determining whether the plaintiff is entitled to attorney's fees under § 1117(a). See Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc., 915 F. Supp. 2d 1179, 1185 (D. Nev. 2013) ("[T]he non-prevailing party's litigation conduct may support a finding that the case is exceptional."); Harris v. Fairweather, No. 11 Civ. 2152(PKC)(AJP), 2012 WL 3956801, at *6 (S.D.N.Y. Sept. 10, 2012) (finding that allegations of willful infringement, "along with defendants' default" were sufficient to justify an award of attorney's fees under § 1117(a)), adopted by, No. 11 Civ. 2152(PKC)(AJP), 2012 WL 5199250 (S.D.N.Y. Oct. 9, 2012).

The facts of this case justify an award of attorney's fees under § 1117(a). Defendants willfully violated the Lanham Act by diverting the unsalable Xtremes® Bites to Silver Dollar. Defendants' diversion scheme involved fraudulent and deceitful conduct, including accepting the Xtremes® Bites under the guise of recycling them, selling the Xtremes® Bites to Silver Dollar as merchantable product, and issuing falsified certificates of disposal to Perfetti. Defendants' unacceptable behavior continued in this Court. Defendants initially ignored the preliminary injunction requiring them to produce an accounting and failed to otherwise participate in the case until this Court issued an order to show cause threatening Jorgensen with temporary incarceration. Defendants then filed two accountings, the first of which provided a vague and incomplete calculation of profits and failed to include any documents evidencing the payments Defendants received for the Xtremes® Bites, and the second of which provided a different and obviously incomplete calculation of profits and included certain documents Defendants should

have produced in the first accounting. Evidence Perfetti obtained from Silver Dollar and submitted in support of its request for damages demonstrated that Defendants' accountings were inaccurate and understated their actual profit. Defendants ultimately did not contest Perfetti's documented and supported damage calculations. This Court entered default judgment against Defendants because they failed to answer Perfetti's complaint. Taken as a whole, these facts make this an "exceptional" case under § 1117(a).

Perfetti also contends that South Dakota law entitles it to recover as compensatory damages the legal fees and expenses for the suit against Harrison and the investigation of Avers. Although South Dakota follows the American Rule for attorney's fees, the Supreme Court of South Dakota has held that attorney's fees are recoverable in tort actions if those fees are "incurred in *other litigation* which is necessitated by the act of the party sought to be charged." Jacobson v. Leisinger, 746 N.W.2d 739, 743 (S.D. 2008) (quoting Grand State Prop., Inc. v. Woods, Fuller, Shultz & Smith, P.C., 556 N.W.2d 84, 88 (S.D. 1996)); see also Hurley v. State Farm Mut. Auto. Ins., No. CIV. 10-4165-KES, 2012 WL 6012803, at *2–3 (D.S.D. Dec. 3, 2012) (holding that attorney's fees generated while litigating a separate breach of contract action are recoverable as compensatory damages in a subsequent bad faith action). Perfetti's fraud and deceit claim is a tort action under South Dakota law under which Perfetti is entitled to damages. Defendants' fraud caused Perfetti to incur legal fees for the case against Harrison to determine how Harrison received the unsalable Xtremes® Bites that he was selling, thereby tracing those to Silver Dollar. Likewise, Defendants' fraud caused Perfetti to incur costs to investigate how Avers received unsalable product, which again was via Silver Dollar. Defendants' issuance of the false certificates of disposal caused Perfetti not to sue Defendants immediately, but to sue Harrison, investigate Avers, and then approach Silver Dollar to unravel Defendants' fraudulent

15

scheme. An award to Perfetti for its ancillary legal fees due to Defendants' fraud and deceit under South Dakota law has the effect of providing full compensation for another element of actual damages to Perfetti, because Perfetti incurred such legal fees to uncover Defendants' subterfuge. Perfetti's attorney's fees in the Harrison action were $9,987.43, and in the Avers investigation were $1,890, for a total of $11,877.43. Doc. 45-3 at 2.

### D. Treble and Punitive Damages

Perfetti contends that it is entitled to damages in an amount three times its actual damages under 15 U.S.C. § 1117(a). Section 1117(a) provides that "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." Id. Section § 1117(a) is designed to compensate the prevailing party and make trademark infringement unprofitable, not to penalize the defendant. 15 U.S.C. § 1117(a); Rainbow Play Sys., Inc. v. GroundScape Techs., LLC, 364 F. Supp. 2d 1026, 1034 (D. Minn. 2005). This Court is already requiring Defendants to disgorge their profits, reimburse Perfetti for the purchase and storage of Silver Dollar's remaining inventory of Xtremes® Bites, and pay Perfetti's attorney's fees both in this case and in tracing the diversion of the Xtremes® Bites to Defendants. The question is whether Perfetti should be entitled to any additional compensation.

Perfetti relatedly argues that it is entitled to punitive damages under South Dakota law because Defendants engaged in willful fraud and deceit. See SDCL § 21-3-2 ("In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, . . . committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant."); Biegler v. Am.

Family Mut. Ins., 621 N.W.2d 592, 605 (S.D. 2001) (holding that jury's finding of deceit was "a sufficient basis upon which the jury's award of punitive damages is justified"). Courts in South Dakota consider five factors when determining whether an award of punitive damages is appropriate: the amount of compensatory damages allowed, the "nature and enormity of the wrong," the wrongdoer's intent, the wrongdoer's financial status, and "all of the circumstances attendant to the wrongdoer's actions." Roth v. Farner-Bocken Co., 667 N.W.2d 651, 666 (S.D. 2003).

A careful consideration of the factors relevant to this case shows that an award of punitive damages, while warranted, should not be large. First, Defendants' conduct was fraudulent and deceitful, but it did not put anyone's health or safety at risk. See Grynberg v. Citation Oil & Gas Corp., 573 N.W.2d 493, 506 (S.D. 1997) (explaining that acts "which result in injury to persons through indifference to and reckless disregard for the health or safety of others" are considered "[o]f a more serious nature" for purposes of punitive damages (internal quotation marks and quotation omitted)). Second, Perfetti, the target of Defendant's fraudulent conduct, is a sophisticated business rather than a naive mark with few financial resources. See Roth, 667 N.W.2d at 666 (listing financial vulnerability of plaintiff as a factor to consider when gauging the degree of reprehensibility of defendant's conduct); Grynberg, 573 N.W.2d at 505 (considering sophistication of plaintiff when determining whether amount of punitive damage award was appropriate). Third, although Defendants have not offered any evidence about their financial condition, it appears from the record that Midwest is a small business that Jorgensen operates with his family. This Court is concerned about Defendants' ability to pay punitive damages on top of the significant amount of actual damages and attorney's fees they already owe. After all, punitive damages are meant to punish, not "permanently cripple or destroy."

Grynberg, 573 N.W.2d at 507–08. Yet this case marks the third occasion where Defendants fraudulently diverted materials it took for recycling, and Defendants were uncooperative and misleading in what they submitted to this Court. Under § 1117(a) and SDCL § 21-3-2, this Court awards a total of an extra $10,000.00 to the remaining damage amounts to punish Defendants for the fraudulent conduct and to deter Defendants from perpetrating any similar scheme.

### E. Permanent Injunction

Perfetti requests a permanent injunction enjoining Defendants from engaging in the diversion and sale of Perfetti products. The standard for determining whether a permanent injunction should issue "is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must obtain success on the merits." Bank One, Utah v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999). In determining whether to grant a preliminary injunction, courts consider the factors set forth in Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (en banc): "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. at 113.

Here, Dataphase factors two through four favor granting a permanent injunction for many of the same reasons discussed in this Court's order granting Perfetti's request for a preliminary injunction. The first Dataphase factor—the threat of irreparable harm to Perfetti—is a different matter. According to Defendants' accountings, they have either recycled or sold all of the Xtremes® Bites in their possession. However, Defendants' representations to Perfetti and to this Court have been unreliable. Defendants have not opposed such a permanent injunction and

although Defendants may or may not have Xtremes® Bites still in their possession or control, a permanent injunction will enter.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendants pay Perfetti $139,242.88 in damages. This sum is the total of Defendants' profits, Perfetti's costs for buying back and storing Silver Dollar's remaining inventory of Xtremes® Bites, and Perfetti's legal fees for the Harrison action and the Avers investigation. It is further

ORDERED that Defendants pay Perfetti an additional $10,000.00 in punitive damages. It is further

ORDERED that Defendants shall pay Perfetti's reasonable attorney's fees and costs in this case. It is further

ORDERED that Perfetti submit an affidavit setting forth its attorney's fees and costs in this case and attaching all billing statements and itemizing its costs. It is further

ORDERED that Perfetti submit a calculation of the prejudgment interest it is seeking, if any. This calculation should include citations to the record and the relevant statutes and case law. It is finally

ORDERED that Defendants are permanently enjoined from engaging in the diversion and sale of Perfetti products including, but not limited to, any remaining Xtremes® Bites.

DATED this 26th day of February, 2016

                                              BY THE COURT:

                                              ROBERTO A. LANGE
                                              UNITED STATES DISTRICT JUDGE